**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CHRISTOPHER COLSON, on his own
behalf and on behalf of those similarly situated,

            Plaintiff,

v.                                                  Case No. 3:09-cv-850-J-34JRK

CABLEVIEW COMMUNICATIONS OF
JACKSONVILLE, INC.,

            Defendant.
_____

**O R D E R**

**THIS CAUSE** is before the Court on the renewed Joint Motion for Final Certification of the Class and Final Approval of the Settlement (Doc. No. 141; Motion) filed on November 4, 2011. The parties filed a previous motion seeking settlement approval on October 7, 2011. See Joint Motion for Final Approval of Settlement and Incorporated Memorandum of Law (Doc. No. 133; Previous Motion). The Court held a hearing on the Previous Motion, on October 20, 2011, during which the Court denied the Previous Motion and granted the parties leave to file an amended motion to address the Court's concerns as discussed on the record. See Clerk's Minutes (Doc. No. 140). The parties then filed the instant Motion, requesting that the Court order final certification of the class and approve the Settlement Agreement and Release of All Claims. See Motion and Exhibit A to the Motion (Doc. No. 141-1; Settlement Agreement and Release). This matter is ripe for review.

**I.      Final Certification**

Prior to approving a class settlement under the FLSA, the Court must determine whether final certification is appropriate. See Burton v. Util. Design, Inc., No. 6:07-cv-1045-Orl-22KRS, 2008 WL 2856983, at *2 (M.D. Fla. July 22, 2008) (citing Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007)); see also Bredbenner v. Liberty Travel, Inc., Case Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *16-17 (D.N.J. Apr. 8, 2011); McCaffrey v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, at *2-3 (D. Kan. Jan. 5, 2011) ("When parties settle FLSA claims before the Court has made a final certification ruling, the court must make some final class certification before it can approve a collective action settlement."); Burkholder v. City of Fort Wayne, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010); Butler v. Am. Cable & Tel., LLC, No. 09 CV 5336, 2011 WL 4729789, at *9 n.7 (N.D. Ill. Oct. 6, 2011); Peterson v. Mortg. Sources Corp., No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011); Clesceri v. Beach City Investigations & Protective Servs., Inc., No. CV-10-3873-JST (Rzx), 2011 WL 320998, at *3 (C.D. Cal. Jan. 27, 2011).

"The FLSA authorizes collective actions against employers accused of violating the FLSA." See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008) (citing 29 U.S.C. § 216(b). Specifically, 29 U.S.C. § 216(b) provides that "'[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.'" Id. (quoting 29 U.S.C. § 216(b)) (alterations in Morgan). Accordingly, "to maintain a collective action under

the FLSA, plaintiffs must demonstrate that they are similarly situated." Id. (citing Anderson, 488 F.3d at 952).

A collective action under the FLSA is different from a class action under Rule 23, Federal Rules of Civil Procedure (Rule(s)). See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 . . . .") (citation omitted). "In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out. By contrast, a putative plaintiff must affirmatively opt into a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir. 2001) (internal citations omitted).[1]

The Eleventh Circuit Court of Appeals has "suggested that district courts deciding whether to certify a collective action [under § 216(b)] engage in a two-stage analysis . . . ." See Anderson, 488 F.3d at 952 (citing Hipp, 252 F.3d at 1218); see also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (per curiam).[2]

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the

---

[1] Although Grayson and Hipp addressed collective actions under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 et seq., "that statute incorporates the FLSA's collective action mechanism," and thus the analysis in Grayson and Hipp "applies in both contexts." See Morgan, 551 F.3d at 1259 n.37 (quotation omitted); see also Anderson, 488 F.3d at 952-53 & n.5.

[2] Although suggested, the two-stage approach is not required, and the district court has discretion in considering class certification. See Hipp, 252 F.3d at 1219. The Court finds the recommended two-stage approach useful in this case.

-3-

pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Cameron-Grant, 347 F.3d 1240, 1243 n.1 (quoting Hipp, 252 F.3d at 1218).[3]

Resolution of the instant Motion requires application of the second stage of the two-tiered analysis[4]—that is, determination by the Court as to whether the claimants are similarly situated. See id. At the second stage, a court considers factors "such as: '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations'—the "more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." Morgan, 551

---

[3] The two-stage approach endorsed in Hipp was borrowed from the Fifth Circuit's discussion in Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995). See Hipp, 252 F.3d at 1218; see also Anderson, 488 F.3d at 952-53. As recognized in Anderson, Mooney has since been overruled in part on other grounds, but the two-stage approach to class certification under § 216(b) remains applicable. See Anderson, 488 F.3d at 952-53 & n. 6.

[4] The Court conditionally certified the class following a hearing on August 31, 2010. See Clerk's Minutes (Doc. No. 96); Order (Doc. No. 98). After a series of revisions, the Court approved a class notice, consent form, and claim form for distribution to the members of the class on July 28, 2011. See Order (Doc. No. 128).

F.3d at 1261 (quotation omitted) (alterations in Morgan).  Accordingly, "at the second stage, 'although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions' and encompass the defenses to some extent." Id. at 1261-62 (quotation omitted). Applying the second-stage analysis, the court in Bredbenner found that final certification was appropriate:

> The factual circumstances underlying the claims of each putative class members are very similar, not disparate. Each held the same job, signed the same employment contract, worked overtime during the relevant class period, received overtime pay pursuant to a common formula, and each claims the same relief under the FLSA. The class as a whole is therefore "similarly situated" to the class representatives. Second, the Court cannot envision any individualized defenses that would interfere with final certification. In any case, the concern with individualized defenses is that they may pose case management problems.  However, the Court need not account for case management issues because, much like the Rule 23 analysis, the class is being certified for purposes of settlement.

Bredbenner, 2011 WL 1344745, at *17 (internal citations omitted); see also Burkholder, 750 F. Supp. 2d at 994.

In this case, the parties have stipulated to the relevant facts.  The class members "were all uniformly classified as independent contractors within the defined class period, paid by the job . . ., worked similar hours, signed independent contractor agreements, signed similar work agreements, received training, received specifications from cable providers, and their pay was subject to charge backs."  Motion at 4.  The main dispute in this case is whether Plaintiff and the class members were correctly classified as independent

contractors.[5] Therefore, Defendant would be making the same argument and presenting the same defense against Plaintiff and the class members. The parties have identified, and the Court independently discerns, no individualized defenses weighing against final certification. Additionally, certifying this collective action will eliminate the need for all fifty-six class members (including Plaintiff)[6] to file individual lawsuits and allow all class members

---

[5] Additional issues include the number of overtime hours each individual class member worked, whether liquidated damages are available, and whether the statute of limitations on these overtime claims is two years or three. See Motion at 7.

[6] Although the parties correctly determined that the final class size is fifty-six, see Motion at 2, 14-15, the Court finds it necessary to clarify the record because the parties made an initial miscalculation and failed to adequately explain how they arrived at their final class size figure. The parties contend that the total class is made up of 283 members. See id. at 2. This number appears to be based on the settlement allocations presented in a spreadsheet attached as Exhibit D to the parties' initial motion for settlement approval. See Joint Motion for Approval of Settlement and Incorporated Memorandum of Law (Doc. No. 112; Initial Motion) and Exhibit D to Initial Motion (Doc. No. 112-4; Settlement Spreadsheet). However, upon review of the Settlement Spreadsheet, the Court determined that five individuals, including Plaintiff, Christopher Colson, were listed twice. Despite being aware of this fact, at least with respect to Plaintiff, as Plaintiff's counsel indicated at the October 20 hearing, the parties failed to correct the total class size. Consequently, the parties have made the Court's job significantly more difficult. Accounting for the five individuals listed twice, the total class size is 278. See Settlement Spreadsheet.

Determining the final class size from those who opted-in is further complicated by the fact that individuals opted-in to this action both before and after the Court approved the notice, claim form, and consent form, and that not all of those individuals that opted-in before notice was given qualify as members of the class. During the course of discovery, the parties determined that some of those individuals were not properly included in the class either because they had previously received payment or had been classified as employees rather than independent contractors. See Motion at 14-15. One such opt-in Plaintiff, John Smith, has already been dismissed. See Joint Stipulation for Dismissal Without Prejudice as to Opt-in Plaintiff, John Smith (Doc. No. 26); Order (Doc. No. 30). In the instant Motion, the parties seek dismissal of nine additional opt-in Plaintiffs: Kimberly Kerns (Doc. No. 4), Rodney Ivey (Doc. No. 5), Donnell Minor (Doc. No. 9), Chris Kennedy (Doc. No. 11), Michael Parrish (Doc. No. 13), Antwan Washington (Doc. No. 14), Stephen NeSmith (Doc. No. 17), Stephen Hagler (Doc. No. 34), and Justin Lieb (Doc. No. 37). Accordingly, those nine opt-in Plaintiffs are due to be dismissed from the action.

Not counting these individuals, Plaintiff's counsel sent the approved documents to a total class, including Plaintiff, of 278 members, and eighty of the documents were returned undelivered. See Motion at 2. Of those who received notice, fifty-two individuals opted-in to the collective action. See id.; Notices of Filing Additional Consents to Join (Doc. Nos. 129, 130, 131 & 132). The parties explained that three of the individuals who opted-in after receiving notice had also filed consents to join before receiving notice (Matthew Prescott, Doc. No. 28, David Colson, Doc. No. 20, and Eric Cross, Doc. No. 48). See Motion at 2, 15. However, what was unclear from the Motion is that an additional three plaintiffs (Sammie Cosby, Jr., Doc. No. 23, Andreas Waldon, Doc. No. 68, and Jason Dingler, Doc. No. 69) had opted-in before the approved notices were sent out and did not file duplicate consents after notice had been given. Therefore, the final class size is determined by adding those who opted in after receiving notice and those who opted in both before and after receiving notice (fifty-two), and those who opted in only before receiving notice (three), and Plaintiff (one), which totals fifty-six.
(continued...)

to benefit from the settlement that has been reached on their behalf. In consideration of the foregoing, the Court finds that Plaintiff and those individuals that have opted-in to this action are similarly situated and final certification is appropriate.

## II.   Approval of Settlement

As FLSA provisions are mandatory, not subject to negotiation or bargaining between employers and employees, and not subject to waiver, Lynn's Food Stores, Inc. v. United States Dep't of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982), the parties were required to submit their settlement agreement to the Court for review and did so by attaching it to the Motion.

Upon due consideration of the terms of the Settlement Agreement and Release,[7] the Court finds that Plaintiffs were represented by counsel; that there exists a genuine dispute between the parties; that the amounts agreed upon represent a full and complete settlement of all pending claims; that attorney's fees are encompassed by the agreement; and that the

---

[6](...continued)

Based on this final number, the Court must make one final correction. The parties contend that twenty-nine percent of class members who received notice and were eligible to join have actually joined the settlement, see Motion at 14, however, the Court notes that the settlement participation rate of all potential class members is approximately twenty percent.

This elaborate and time consuming analysis of the class size was necessitated by the parties' failure to provide the Court with accurate information, to ensure the accuracy of the Settlement Spreadsheet, and accordingly the total class size number, and to move to dismiss those individuals who did not qualify as members of the class until the instant Motion. This lack of attention to detail and cavalier approach is disappointing given the fact that counsel frequently litigate these types of cases. Counsel are cautioned to ensure that all information presented to the Court is accurate, complete, and clear, and to file appropriate motions to correct any inaccuracies in the record as early as possible.

[7]   The Court notes that, under the Settlement Agreement and Release, Plaintiff and the class members are not providing Defendant with a general release, but instead are only releasing "any and all wage related claims which the Named Plaintiff or any Opt-in Plaintiff may have against Cableview." Settlement Agreement and Release at 5.

compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA provisions.[8] Finding that the Settlement Agreement and Release is fair and reasonable, the Settlement Agreement and Release is approved.

In light of the foregoing, it is hereby **ORDERED:**

1. The Joint Motion for Final Certification of the Class and Final Approval of the Settlement (Doc. No. 141) is **GRANTED**.

2. The claims raised by Kimberly Kerns, Rodney Ivey, Donnell Minor, Chris Kennedy, Michael Parrish, Antwan Washington, Stephen NeSmith, Stephen Hagler, and Justin Lieb, opt-in Plaintiffs in this matter, are **DISMISSED, without prejudice**.

3. For purposes of satisfying the FLSA, the Settlement Agreement and Release is **APPROVED**.

4. This case is **DISMISSED with prejudice**.

---

[8] In reaching this conclusion, the Court recognizes that it must consider the reasonableness of any award of attorney's fees, but it is not required to conduct "an in depth analysis . . . unless the unreasonableness of such award is apparent from the face of the documents." King v. My Online Neighborhood, Inc., No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007) (quoting Perez v. Nationwide Protective Servs., Case No. 6:05-cv-328-ORL-22JGG (Oct. 31, 2005)). As the total fee award sought in this case is not patently unreasonable and Defendant does not contest the reasonableness of the award, the Court has not conducted an in-depth analysis of the attorney's fees sought. Accordingly, the award of attorney's fees in this action does not reflect a determination that the hourly rate charged by Plaintiffs' counsel constitutes a reasonable hourly rate in this or any applicable market.

Additionally, although the Court was concerned with the relatively high incentive fee awarded to Plaintiff under the Settlement Agreement and Release, Plaintiff provided a declaration explaining the time he invested in the case, the risks he took, and the consequences he has suffered as a result of his participation as named Plaintiff in this action. See Declaration of Christopher Colson, Exhibit B to the Motion (Doc. No. 141-2). The Court finds that the award of such an incentive fee is appropriate in this case, particularly since neither Defendant nor any other class member has objected to the settlement. See Motion at 14; Clerk's Minutes (Doc. No. 140); see also Su v. Elec. Arts, Inc., No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780 (M.D. Fla. Aug. 29, 2006) ("In light of the risks associated with initiating litigation against his former employer and the time and effort spent as the lead plaintiff in this case, the Court finds the incentive fee is fair and reasonable."). However, that determination is made solely for the purposes of the resolution of the instant Motion, and is limited to the unique facts before the Court in this particular case.

5. Except as set forth in the Settlement Agreement and Release, the parties shall bear its own fees and costs.

6. The Clerk of the Court is directed to terminate all previously scheduled deadlines and pending motions and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 7th day of June, 2012.

*Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States District Judge

lc16

Copies to:
Counsel of Record